# 14-4313-CV

## United States Court of Appeals

*for the*

## Second Circuit

———— ◆ ————

MICROSOFT CORPORATION, MICROSOFT LICENSING GP,

*Plaintiffs-Counter-Defendants-Appellees,*

– v. –

SAMSUNG ELECTRONICS CO., LTD.,

*Defendant-Counter-Claimant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-COUNTER-CLAIMANT-APPELLANT

GEORGE A. RILEY
ANDREW FRACKMAN
JOHN KAPPOS
GARY SVIRSKY
RYAN YAGURA
IAN SIMMONS
BRAD M. ELIAS
JEFFREY A. N. KOPCZYNSKI
GARABED M. HOPLAMAZIAN
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendant-Counter-
Claimant-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellant Samsung Electronics Co., Ltd. ("Samsung") makes the following disclosures:  Samsung is a nongovernmental, publicly held corporate entity located in South Korea.  Samsung does not have a parent corporation, and no publicly held corporation owns 10% or more of Samsung's stock.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................................1

QUESTIONS PRESENTED ...............................................................................3

STATEMENT OF THE CASE ...........................................................................4

STATEMENT OF FACTS .................................................................................7

      A.    Samsung and Microsoft executed
           two interconnected contracts........................................................7

      B.    The parties agreed to arbitrate disputes concerning
           Annual Invoices and Royalty Reports. ......................................9

      C.    The parties were negotiating a resolution to their
           disputes when Microsoft filed this lawsuit. .............................10

      D.    The Amended Complaint attempts to relieve Microsoft
           of its obligations while enforcing Samsung's obligations........12

STANDARD OF REVIEW....................................................................................12

SUMMARY OF ARGUMENT ...........................................................................12

ARGUMENT .....................................................................................................15

    I.    AN ARBITRATION PANEL MUST DECIDE ARBITRABILITY. .......................15

      A.    Under Supreme Court and Second Circuit law,
           selecting ICC Rules is clear and unmistakable intent to
           submit the question of arbitrability to the arbitrators. ..............15

      B.    The district court erred in reaching the arbitrability
           question because the parties agreed that the
           arbitration panel would decide that question. ...........................16

           1.    *The question of an arbitration clause's breadth is
               different from the question of a dispute's
                arbitrability.*.................................................................17

           2.    *The* NASDAQ *decision does not overturn this
               Court's precedents in* VRG Linhas *and* Shaw
               Group*. .........................................................................20

i

# TABLE OF CONTENTS
## (continued)

                                                                    **Page**

II.    THE PARTIES' DISPUTES MUST BE ARBITRATED UNDER THE
       BCA'S PLAIN LANGUAGE. ....................................................22

       A.    Both counts in the Amended Complaint
             fit within Section 3.3 of the BCA. ............................................22

       B.    The district court erred in holding that Microsoft's
             claims do not fall within the BCA's arbitration clause............26

       C.    The PLA's arbitration clause and the BCA's
             forum-selection provision are irrelevant because
             the BCA's arbitration clause is controlling..............................28

CONCLUSION ........................................................................................29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
    424 F.3d 278 (2d Cir. 2005) ..............................................................29

*Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship
Sys. Inc.*,
    2009 U.S. Dist. LEXIS 3725 (E.D. La. Jan. 12, 2009)........................19

*Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*,
    2014 U.S. Dist. LEXIS 142256 (S.D.N.Y. Sept. 17, 2014) ................. 13, 18, 27

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005) ..............................................................16

*CRT Capital Grp. v. SLS Capital, S.A.*,
    2014 U.S. Dist. LEXIS 168260 (S.D.N.Y. Dec. 4, 2014) ..................... 6, 14, 21

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)......................................................................... 15, 18

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
    371 F. Supp. 2d 571 (S.D.N.Y. 2005) ................................................17

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) ...................................................... 24, 26

*Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*,
    518 F. App'x 20 (2d Cir. 2013) .........................................................16

*John Hancock Life Ins. Co. v. Wilson*,
    254 F.3d 48 (2d Cir. 2001) ...............................................................17

*Katz v. Feinberg*,
    290 F.3d 95 (2d Cir. 2002) ...............................................................22

*McAllister Bros. v. A & S Transp. Co.*,
    621 F.2d 519 (2d Cir. 1980) .............................................................23

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mineola Garden City Co. v. Bank of Am.*,
2014 U.S. Dist. LEXIS 88118 (E.D.N.Y. June 26, 2014) ........................... 23, 24

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ...................................................................................... 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......................................................................................... 23

*NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*,
770 F.3d 1010 (2d Cir. 2014) ............................................................. 6, 14, 20

*NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*,
957 F. Supp. 2d 388, 405 (S.D.N.Y. 2013) ................................................ 21, 22

*Oriental Republic of Uru. v. Chem. Overseas Holdings, Inc.*,
2006 U.S. Dist. LEXIS 2261 (S.D.N.Y. Jan. 24, 2006) .................................... 17

*Pharmacia & Upjohn Co. v. Elan Pharm., Inc.*,
10 A.D.3d 331 (1st Dep't 2004) ........................................................................ 21

*Severstal US Holdings, LLC v. RG Steel, LLC*,
865 F. Supp. 2d 430 (S.D.N.Y. 2012) ........................................................ 15, 23

*Shaw Grp., Inc. v. Triplefine Int'l Corp.*,
322 F.3d 115 (2d Cir. 2003) ................................................................. 4, 13, 15

*Sutherland v. Ernst & Young LLP*,
726 F.3d 290 (2d Cir. 2013) ........................................................................ 1, 12

*Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys.*,
840 F. Supp. 2d 935 (E.D. Va. 2012) ................................................................ 19

*VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities
Partners II L.P.*,
717 F.3d 322 (2d Cir. 2013) ........................................................... 4, 12, 13, 16

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

## STATUTES

9 U.S.C. § 16.................................................................................................1

## STATEMENT OF JURISDICTION

Plaintiffs-Appellees Microsoft Corporation and Microsoft Licensing GP (together, "Microsoft") sued Defendant-Appellant Samsung Electronics Co., Ltd. ("Samsung") on August 1, 2014 in the Southern District of New York, asserting diversity jurisdiction under 28 U.S.C. § 1332, and jurisdiction under 28 U.S.C. §§ 2201–02 for its declaratory judgment claim. Microsoft amended its complaint on October 3, 2014, and Samsung filed its Answer and Counterclaims on October 30, 2014. On October 10, 2014, Samsung moved to compel arbitration and stay the district court proceedings. On November 18, 2014, Samsung timely filed its notice of appeal of the district court's November 14, 2014 short-form order denying Samsung's motion to compel arbitration and stay the case. Samsung amended its notice of appeal on November 24, 2014 to incorporate the district court's November 20, 2014 opinion explaining its denial.

Samsung now appeals as of right under the Federal Arbitration Act ("FAA") the district court's denial of the motion to compel arbitration. *See* 9 U.S.C. §§ 16(a)(1)(A), (C) ("An appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of this title [or] denying an application under section 206 of this title to compel arbitration"); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013) ("We have jurisdiction over this appeal because the

[FAA] authorizes interlocutory appeals from denials of motions to compel arbitration.").

## QUESTIONS PRESENTED

1.      Did the district court err in ruling that it and not an arbitration panel should decide the threshold question of arbitrability?

2.      Did the district court err in ruling that the disputes between Microsoft and Samsung are not subject to arbitration pursuant to the parties' express agreement?

## STATEMENT OF THE CASE[1]

When Microsoft and Samsung entered into a seven-year licensing, development, and marketing agreement, they recognized the potential for future disputes. To avoid wasting resources on litigation and to protect the confidentiality of commercially sensitive information at the heart of their agreement, the parties specified that they would arbitrate certain disputes under the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"). Arbitration was the parties' clear and unmistakable intent then, and arbitration is what Court of Appeals precedent mandates now.

Under this Court's precedents, by agreeing to arbitrate pursuant to ICC Rules the parties committed to submit any questions about the arbitrability of certain claims to an arbitration panel. Just last year, in *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013), this Court held that "an arbitration clause subjecting disputes to the rules and procedures of the [ICC] clearly and unmistakably commits to arbitration any questions about the arbitrability of particular disputes." That decision reaffirmed an earlier holding in *Shaw Group, Inc. v. Triplefine International Corp.*, 322 F.3d 115 (2d Cir. 2003). Therefore, whether Microsoft's claims fall within the scope of

---

[1]  Unless otherwise specified, all emphasis is added and all internal quotations and citations are omitted. References to "JA" are to the Joint Appendix filed along with this brief.

the parties' arbitration provision in Section 3.3 of the Confidential Business
Collaboration Agreement ("BCA") is a question that should be considered only
after an arbitration panel determines arbitrability.

Even if the parties had not selected ICC Rules, the parties' disputes must be
arbitrated because Microsoft's claims fall squarely within the arbitration clause.
Under Section 3.3 of the BCA, arbitrable issues include "any dispute" about
"Annual Invoices" or "Royalty and Credit Calculation Reports"—both of which
form the basis of Microsoft's two claims. In the Amended Complaint's first count,
Microsoft seeks approximately $7 million in interest for Samsung's delay in
paying the 2013 **Annual Invoice** while the parties sought to resolve their royalty
dispute. In its second count, Microsoft seeks a judicial declaration that Samsung's
reason for the delay—that Microsoft's merger with a Samsung competitor
breached the parties' agreement—does not excuse Samsung from submitting
**Royalty Reports** and making future **Annual Invoice** payments.

In denying Samsung's motion to compel arbitration, the district court held
that it would decide the arbitrability of the parties' disputes. The district court
distinguished *VRG Linhas* and *Shaw Group* because they involved "broad"
arbitration clauses, whereas the district court characterized the arbitration clause
here as narrow.[2] The district court was of the view that the recent decision in

---

[2] *See* JA at A-194–95 (Nov. 20, 2014 Opinion) ("MTCA Op.").

5

*NASDAQ OMX Group, Inc. v. UBS Securities LLC*, 770 F.3d 1010 (2d Cir. 2014),

somehow overturned those precedents. Leaving aside that *NASDAQ* does not even

mention *Shaw Group* or the ICC Rules, and refers to *VRG Linhas* only once in

passing, the district court, relying on *NASDAQ*, held that there was no clear and

unmistakable intent under the BCA to submit arbitrability to the arbitration panel.[3]

The district court concluded that the parties' disputes do not fit into the arbitration

clause because they are about contract interpretation rather than Royalty Reports or

Annual Invoices—as though the two are mutually exclusive.[4]

In light of the law in this Circuit, the district court erred in reaching the

question of arbitrability. Under *VRG Linhas*, by choosing ICC Rules, the parties

"clearly and unmistakably" agreed to submit the question of arbitrability to the

arbitration panel. *NASDAQ* does not change that because, unlike here, the

arbitration clause in that case allowed arbitrators to decide arbitrability ***only if*** the

dispute was not foreclosed by NASDAQ rules, which it was. Indeed, less than a

month after the district court ruled here, in *CRT Capital Group v. SLS Capital,

S.A.*, 2014 U.S. Dist. LEXIS 168260, at *24 (S.D.N.Y. Dec. 4, 2014), Judge Koeltl

read the *NASDAQ* decision as Samsung reads it now. Microsoft and Samsung did

not agree to a qualifying provision similar to the one in *NASDAQ*. In fact, the

---

[3]   *See* JA at A-195–95 (MTCA Op.).

[4]   *See* JA at A-197–99 (MTCA Op.).

parties here broadly agreed to arbitrate "any dispute" with respect to various subjects—including Annual Invoices and Royalty Reports.[5]

In any event, the district court erred in holding that the arbitration clause does not cover Microsoft's claims, because it cannot be said with "positive assurance"—as the case law requires—that the broad "any dispute" language of BCA Section 3.3 is "not susceptible to an interpretation that covers" Microsoft's claims. Accordingly, this Court should reverse the district court's ruling and grant Samsung's motion to compel arbitration and stay the case.

## STATEMENT OF FACTS

### A.  Samsung and Microsoft executed two interconnected contracts.

Samsung and Microsoft executed the BCA and the Confidential Patent Licensing Agreement ("PLA"),[6] effective as of July 1, 2011. Spanning both contracts, the parties agreed to collaborate on the "development and marketing of certain Samsung Windows devices" and to cross-license their patent portfolios.[7]

Specifically, under the PLA, Samsung and Microsoft agreed to cross-license their patent portfolios and release each other from any existing liability for patent infringement.[8] Samsung agreed to pay annual royalties to Microsoft for seven

---

[5]   JA at A-90 (Elias Decl., Ex. 2 ("BCA") § 3.3.1).

[6]   *See* JA at A-62 (Elias Decl., Ex. 1 ("PLA") at 1); JA at A-86 (BCA).

[7]   JA at A-86 (BCA at 1); *see also* JA at A-87 (BCA §§ 2.1, 2.2, 3.1).

[8]   *See* JA at A-69–70 (PLA §§ 2.1, 2.2, 3.1).

years based on Samsung's per-unit sales of Android smartphones and tablets.[9]

Microsoft, in turn, agreed to reduce Samsung's annual royalty payments in

accordance with a fixed schedule of "Microsoft License Fee Credit[s]."[10]

Under the BCA, the parties agreed to collaborate in "develop[ing] and

marketing . . . certain Samsung Windows devices" and using Microsoft search

services.[11] Microsoft committed to provide Samsung with "Success Credits" for

meeting certain sales goals for Windows phones and tablets.[12] And Microsoft

committed to provide Samsung with annual "Collaboration Credits" for creating

and executing a plan to develop and market Windows phones and tablets and for

using Microsoft search services.[13] The amounts Samsung would owe under the

agreements must be reported to Microsoft on an annual "Royalty and Credit

Calculation Report" (the "Royalty Report").[14] Microsoft is then required to issue

an "Annual Invoice" for Samsung's payment.[15] Under the BCA, the "Annual

Invoice . . . will be deemed to constitute, include, *supersede* and be in lieu of any

invoice to be issued by Microsoft under . . . the PLA," and "no separate or

---

[9]  *See* JA at A-73 (PLA § 4.2.2).

[10]  JA at A-73 (PLA § 4.2.1), A-85 (PLA Ex. B).

[11]  JA at A-86 (BCA at 1).

[12]  JA at A-87 (BCA § 3.1.2), A-126–28 (BCA Ex. E).

[13]  JA at A-87 (BCA § 3.1.1), A-108–25 (BCA Exs. B, C, D).

[14]  JA at A-88 (BCA § 3.1.4), A-129 (BCA Ex. F).

[15]  JA at A-89 (BCA § 3.2.1).

additional invoice will be issued under . . . the PLA."[16]  The same is true for

Royalty Reports issued pursuant to the BCA.[17]

### B. The parties agreed to arbitrate disputes concerning Annual Invoices and Royalty Reports.

The BCA prescribes how the parties must resolve certain disputes.  Under

Sections 3.3.1 and 3.3.2, after exhausting good-faith efforts to resolve the dispute

through negotiation, the parties must submit it to "binding arbitration under the

auspices and in accordance with the Rules of Arbitration of the International

Chamber of Commerce" (with certain modifications to ICC Rules).[18]  The

arbitrable issues include "***any dispute*** between the parties with respect to any

Royalty and Credit Calculation Report . . . or ***any Annual Invoice***."[19]  While the

BCA contains a forum-selection provision consenting to jurisdiction and venue in

the Southern District of New York,[20] that provision explicitly excludes disputes

"covered under Section 3.3"—*i.e.*, disputes the parties expressly agreed to

arbitrate.[21]

---

[16]  JA at A-89 (BCA § 3.2.1).

[17]  *See* JA at A-88 (BCA § 3.1.4) (the "Royalty and Credit Calculation Report . . . will be deemed to constitute, include, supersede and be in lieu of any 'Royalty Report' otherwise due under Section 4.2.3 of the PLA" and "no separate or additional 'Royalty Report' will be due under Section 4.2.3 of the PLA").

[18]  JA at A-90 (BCA § 3.3.2); *see also* JA at A-90 (BCA §§ 3.3.1, 3.3.3).

[19]  JA at A-90 (BCA § 3.3.1).

[20]  *See* JA at A-98 (BCA § 9.5).

[21]  JA at A-98 (BCA § 9.5); *see also* JA at A-90–91 (BCA § 3.3).

9

Importantly, ICC Rules grant broad authority to the arbitrators to resolve the jurisdictional question of arbitrability. Those rules state that "any question of jurisdiction . . . shall be decided directly by the arbitral tribunal."[22] In certain cases, threshold issues concerning multiple parties or multiple arbitration agreements may be referred to the International Court of Arbitration, but once resolved, "any decision as to the jurisdiction of the arbitral tribunal . . . shall then be taken by the arbitral tribunal itself."[23]

### C. The parties were negotiating a resolution to their disputes when Microsoft filed this lawsuit.

On August 29, 2013, Samsung sent Microsoft the Fiscal Year 2 Royalty Report for the year ending June 30, 2013.[24] On September 11, 2013, pursuant to BCA Section 3.2.1,[25] Microsoft issued an Annual Invoice based on the Royalty Report.[26] In the days before issuing that Annual Invoice, Microsoft announced its intent to merge Nokia's Devices and Services Business into Microsoft.[27] The Nokia merger, which formally closed on April 25, 2014, touched off the parties' disputes here.

---

[22] Nov. 26, 2014 Declaration of George A. Riley in Support of Samsung's Motion to Stay Trial Court Proceedings Pending Appeal ("Riley Stay Decl.") (Dkt. No. 13), Ex. 1 at Art. 6(3).

[23] Riley Stay Decl., Ex. 1 at Art. 6(4), (5).

[24] *See* JA at A-38 (Am. Compl. ¶ 10).

[25] *See* JA at A-89 (BCA § 3.2.1).

[26] *See* JA at A-45 (Am. Compl. ¶ 36).

[27] *See* JA at A-38–39 (Am. Compl. ¶ 11).

BCA Section 9.7 prohibits either party from assigning "any rights or obligations hereunder."[28]  The term "assignment" is defined to include any "merger of a party with a third party" where the "assignment is to a competitor of the other party."[29]  Microsoft does not contest that Nokia is a Samsung competitor in the handheld device market.  Samsung thus argued that the merger between Microsoft and Nokia breached Section 9.7, giving Samsung the right to terminate the BCA. And under BCA Section 8.5, Samsung also has the right to terminate the PLA.[30]

Microsoft's breach is the focus of the parties' disputes about the Fiscal Year 2 Annual Invoice underlying Microsoft's claims in this case.  Samsung quickly put Microsoft on notice that the Nokia merger violated the terms of the BCA and PLA, and as Microsoft concedes in the Amended Complaint, Samsung made the Fiscal Year 2 payment late and under a reservation of rights precisely because Samsung contended that Microsoft breached.[31]  While the parties attempted to negotiate a compromise, Microsoft used the interest payment on the Fiscal Year 2 Royalty Report as a pretext to file this lawsuit.

---

[28]  JA at A-98 (BCA § 9.7).

[29]  JA at A-98 (BCA § 9.7); *see also* JA at A-39–40, 47, 50–51 (Am. Compl. ¶¶ 15, 42, 43, 51).

[30]  *See* JA at A-96 (BCA § 8.5) ("If Samsung terminates this Agreement pursuant to Section 9.7, then Samsung may terminate the PLA . . . .").

[31]  *See* JA at A-48–49 (Am. Compl. ¶¶ 47, 49).

### D.    The Amended Complaint attempts to relieve Microsoft of its obligations while enforcing Samsung's obligations.

Microsoft makes two claims in this lawsuit, both of which directly relate to an Annual Invoice.  First, Microsoft asserts that Samsung breached the PLA by failing to pay the Fiscal Year 2 Annual Invoice on time and seeks to recover interest on the late payment.[32]  Second, Microsoft seeks a declaration that Samsung's stated reason for delaying payment of the Fiscal Year 2 Annual Invoice—that Microsoft improperly merged with a Samsung competitor—does not excuse Samsung from submitting royalty reports and making future invoice payments.[33]  While Samsung vigorously disputes the merits of both Microsoft claims, Samsung argued below—and argues on appeal here—that both counts must be resolved in an arbitration under ICC Rules in accordance with BCA Section 3.3.

## STANDARD OF REVIEW

Under the FAA and this Court's precedent, district court decisions refusing to compel arbitration are reviewed de novo.  *See Sutherland*, 726 F.3d at 295.

## SUMMARY OF ARGUMENT

Under binding precedent, when Samsung and Microsoft agreed to arbitrate under ICC Rules, they clearly and unmistakably expressed their intent to submit questions of arbitrability to the arbitration panel.  This Court's holdings in *VRG*

---

[32]  *See* JA at A-48–49 (Am. Compl. ¶¶ 45–48).

[33]  *See* JA at A-49–51 (Am. Compl. ¶¶ 49–51).

*Linhas*, 717 F.3d at 326, and *Shaw Group*, 322 F.3d at 124–25, mandate that conclusion.  In *VRG Linhas* this Court held that selecting ICC Rules "clearly and unmistakably commits to arbitration any questions about the arbitrability of particular disputes."  717 F.3d at 326.  And in *Shaw Group*, this Court held that "any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself."  322 F.3d at 122, 124–25.

The district court made two errors in not following *VRG Linhas* and *Shaw Group*.  **First**, the court below held that the breadth of an arbitration clause controls the arbitrability question.[34]  But *VRG Linhas* and *Shaw Group* do not support this, and in fact courts in this Circuit have repeatedly separated the issue of an arbitration clause's scope from the question of arbitrability.  As one decision recently explained, excluding "some areas of possible dispute from the scope of an arbitration clause does not serve to restrict the reach of an otherwise broad clause in the areas in which it was intended to cover."  *Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 2014 U.S. Dist. LEXIS 142256, at *9–10 (S.D.N.Y. Sept. 17, 2014).  Here, the parties agreed to arbitrate "any dispute" about various subjects—including Annual Invoices and Royalty Reports.

---

[34]  *See* JA at A-194–96 (MTCA Op.).

**Second**, the district court erred in its application of *NASDAQ*.[35]  The arbitration clause there contained a "qualifying provision" that allowed an arbitrator to decide arbitrability **only if** the dispute was not foreclosed by NASDAQ rules, which it was.  *See NASDAQ*, 770 F.3d at 1031.  In contrast, Microsoft and Samsung imposed **no conditions** on allowing the arbitration panel to decide arbitrability.  In the short time since *NASDAQ* was issued, at least one court recognized that the qualification to arbitration in *NASDAQ* distinguishes that case from the holdings in *VRG Linhas* and *Shaw Group*.  *See CRT Capital Group*, 2014 U.S. Dist. LEXIS 168260, at *24.

Even if the district court had properly reached the arbitrability question, Microsoft's claims are arbitrable because they fit within BCA Section 3.3. Microsoft's first claim for interest on an Annual Invoice is plainly a "dispute . . . with respect to . . . any Annual Invoice."[36]  The same is true for Microsoft's claim seeking a declaratory judgment governing the Fiscal Year 2 Royalty Report and future reports, which is a "dispute . . . with respect to any Royalty and Credit Calculation Report."[37]  Moreover, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Severstal US Holdings, LLC v. RG*

---

[35]  *See* JA at A-194–96 (MTCA Op.).

[36]  JA at A-90 (BCA § 3.3.1).

[37]  JA at A-90 (BCA § 3.3.1).

14

*Steel, LLC*, 865 F. Supp. 2d 430, 438 (S.D.N.Y. 2012).  But the district court did not apply this rule and instead held that the parties' disputes are about contract interpretation and so are not arbitrable, without explaining how an issue of contract interpretation makes the disputes any less about arbitrable Annual Invoice and Royalty Report issues.[38]

# ARGUMENT

## I.   AN ARBITRATION PANEL MUST DECIDE ARBITRABILITY.

### A.   Under Supreme Court and Second Circuit law, selecting ICC Rules is clear and unmistakable intent to submit the question of arbitrability to the arbitrators.

The Supreme Court has held that where there is "clear and unmistakable" evidence that the parties intended to submit any questions of arbitrability to an arbitrator, federal courts should enforce that agreement.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  And this Court has held the "clear and unmistakable" standard is satisfied where the parties have agreed to arbitrate under the ICC Rules, which provide that "any decision as to the jurisdiction of the Arbitral Tribunal ***shall be taken by the Arbitral Tribunal itself***."  *Shaw Group*, 322 F.3d at 122, 124–25 (quoting ICC Rules, Article 6).

Similarly, last year in *VRG Linhas*, this Court stated "that an arbitration clause subjecting disputes to the rules and procedures of the ICC International

---

[38]  *See* JA at A-197–99 (MTCA Op.).

15

Court of Arbitration ***clearly and unmistakably*** commits to arbitration any questions about the arbitrability of particular disputes." 717 F.3d at 326.[39]

Pursuant to BCA Section 3.3.2, "the parties agree[d] to exclusively settle such dispute[s listed in BCA Section 3.3.1] by binding arbitration under the auspices and in accordance with the Rules of Arbitration of the International Chamber of Commerce."[40] Accordingly, under *VRG Linhas* and *Shaw Group*, the arbitrability of Microsoft's claims against Samsung is a question for the arbitration panel and not for the district court.

### B. The district court erred in reaching the arbitrability question because the parties agreed that the arbitration panel would decide that question.

The district court distinguished *VRG Linhas* and *Shaw Group* on the basis that those cases involved what the court viewed as broad arbitration clauses, whereas the arbitration clause here was supposedly narrow.[41] That distinction is

---

[39] This Court has reached the same conclusion with respect to the AAA rules, which similarly provide that the arbitrators shall decide arbitrability. *See*, *e.g.*, *Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) (holding that the "Agreement is not ambiguous, and by incorporating the American Arbitration Association ('AAA') rules the parties agreed to have the arbitrators decide arbitrability"); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (interpreting arbitration agreement selecting AAA rules and holding that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

[40] JA at A-90 (BCA § 3.3.2).

[41] *See* JA at A-194–95 (MTCA Op.).

16

irrelevant under the law. What matters is whether the parties imposed any conditions on allowing an arbitrator to decide arbitrability (as happened in *NASDAQ*), even if they did not commit every possible issue to arbitration (as is the situation here and in the cases discussed below).

### 1. The question of an arbitration clause's breadth is different from the question of a dispute's arbitrability.

Meeting the "clear and unmistakable" standard when parties select ICC or AAA Rules does not turn on whether they agreed to a broad arbitration clause. Courts in this Circuit have separated out the question of an arbitration clause's breadth from the question of a dispute's arbitrability. For example, the court in *Oriental Republic of Uruguay v. Chemical Overseas Holdings, Inc.*, held that the "parties may overcome the *First Options* presumption [that courts decide arbitrability] by entering into a separate agreement that (1) employs the 'any and all' language, *or* (2) expressly incorporates the provisions of a tribunal that requires questions of arbitrability to be decided in arbitration." 2006 U.S. Dist. LEXIS 2261, at *17–18 (S.D.N.Y. Jan. 24, 2006) (citing *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 55 (2d Cir. 2001) and granting motion to compel arbitration); *see also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 371 F. Supp. 2d 571, 575 (S.D.N.Y. 2005) (granting motion to compel arbitration and holding "[a]n arbitration clause . . . does not need to be unlimited in order sufficiently to evidence the parties' intent to arbitrate questions of arbitrability.").

17

The Supreme Court made clear in *First Options* that **what** disputes the parties agree to arbitrate (or scope) is different from **whom** the parties pick to decide arbitrability. *See First Options*, 514 U.S. at 944–45. In other words, under *First Options*, regardless of an arbitration clause's scope, the contracting parties may agree to let an arbitrator decide what issues fall within that clause, so long as they do so "clearly and unmistakably." Just a few months ago Judge Briccetti highlighted the difference between the question of scope and the question of arbitrability—he explained that "the exclusion of some areas of possible dispute from the scope of an arbitration clause does not serve to restrict the reach of an otherwise broad clause in the areas in which it was intended to cover." *Breckenridge Edison Dev.*, 2014 U.S. Dist. LEXIS 142256, at *9–10 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985), and granting motion to compel arbitration). The court reasoned that where an arbitration provision mandates arbitration of "any dispute" with respect to certain enumerated categories, "it appears the parties intended the Provisions to be construed broadly within each category." *Id.* at *9. That holding applies with full force here, where the parties agreed to arbitrate "any dispute" with respect to Royalty Reports and Annual Invoices.[42]

---

[42] JA at A-90 (BCA § 3.3.1).

18

The distinction between the question of scope and arbitrability is not unique to this Circuit. As one court explained after reviewing the relevant case law:

> The AAA rule, according to the overwhelming majority of federal courts, constitutes specific evidence that the parties intended to arbitrate arbitrability. ***That the arbitration clause specifies the types of disputes that are arbitrable does not compel the conclusion that the parties did not intend for the arbitrator to decide whether a particular dispute falls within the ambit of the disputes covered by the clause***. [The party opposing arbitration must] explain[] how the two provisions can be harmonized to reach its preferred result without also rejecting the reasoning of the other federal courts to decide this issue or reading the incorporated provision out of the contract.

*Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, 2009 U.S. Dist. LEXIS 3725, at *16–17 (E.D. La. Jan. 12, 2009). Other courts have reached the same conclusion. *See Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys.*, 840 F. Supp. 2d 935, 943 (E.D. Va. 2012) ("[D]elegation to the arbitrator of the power to determine arbitrability does not disappear merely because the arbitration clause in question is narrow.").

Under this law, breadth of an arbitration clause has no bearing on the fact that when Microsoft and Samsung selected ICC Rules they manifested a clear and unmistakable intent to submit questions of arbitrability to the arbitration panel. That the parties here agreed to arbitrate specific listed types of disputes—such as about Annual Invoices and Royalty Reports—does not contradict or suggest ambiguity about the parties' agreement to adopt ICC Rules and submit the question of arbitrability to the arbitration panel.

19

**2.** ***The* NASDAQ *decision does not overturn this Court's precedents in* VRG Linhas *and* Shaw Group*.***

The district court, however, brushed aside the above law, deciding that *NASDAQ* somehow overturned *VRG Linhas* and *Shaw Group*, even though *NASDAQ* devotes no substantive analysis to those decisions.[43]  Even ignoring that *NASDAQ* did not involve ICC Rules, that decision is fully consistent with this Court's precedents because it involved an arbitration clause that allowed an arbitrator to decide arbitrability ***only if*** the dispute was not foreclosed by NASDAQ rules, which it was.  *See NASDAQ*, 770 F.3d at 1031 (noting that "the parties' arbitration agreement is subject to qualification: 'Except as may be provided in the NASDAQ OMX Requirements'").  The *NASDAQ* arbitration clause is thus distinct from the one here, where Microsoft and Samsung imposed ***no conditions*** on allowing an arbitration panel to decide arbitrability.

Indeed, that is a distinction that courts have recognized.  Less than a month after the district court issued the order now on appeal, Judge Koeltl explained in *CRT Capital Group* that *NASDAQ* does not conflict with *VRG Linhas* and *Shaw Group*.  The court went on to discuss the arbitration clauses in *NASDAQ* and *Shaw Group*, holding that the one in *NASDAQ* is distinct because it involved an arbitration clause with a "qualifying provision" that must be satisfied before a

---

[43]  *See* JA at A-194–96 (MTCA Op.).  The NASDAQ court mentioned *VRG Linhas* once and in passing only.

20

dispute is sent to arbitration.  2014 U.S. Dist. LEXIS 168260, at *24 (denying

motion to enjoin arbitration).  That is precisely Samsung's view of *NASDAQ*—it

does not overturn *VRG Linhas* and *Shaw Group*, but rather interprets a different

type of arbitration clause.

Similarly, in *Pharmacia & Upjohn Co. v. Elan Pharmaceuticals, Inc.*, 10

A.D.3d 331, 333 (1st Dep't 2004), which was decided by New York's First

Department and relied on by the district court in *NASDAQ*, the court recognized

the uniqueness of an arbitration clause with a qualifying provision:[44]

> It is true, as [defendant] argues, that this court has held that the
> ***parties' incorporation of the AAA Rules gives the arbitrator
> jurisdiction over questions of arbitrability, even though the clause in
> question contains exceptions to the agreement to arbitrate***.  Here,
> however, the clause in question not only excepts disputes involving
> intellectual property rights from arbitration but also, ***in equally clear
> language, removes the exception for intellectual property disputes
> from the Rules of the AAA***.

*Pharmacia*, 10 A.D.3d at 333.  The BCA's arbitration clause falls into the first

category above because it "contains exceptions to the agreement to arbitrate" every

potential dispute.  And it does not fall into the second category because it contains

no language removing disputes about arbitrability from the ICC Rules.

The situation here is on all fours with these cases because the parties agreed

to arbitrate "any dispute" about various subjects—including Annual Invoices and

---

[44]  The district court in *NASDAQ* noted that the "arbitration clause here mirrors the
one in *Pharmacia*."  *NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*, 957 F. Supp.
2d 388, 405 (S.D.N.Y. 2013).

Royalty Reports.[45]  Therefore, there is no basis to find "an ambiguity as to whom the parties intended to submit questions of arbitrability,"[46] which was the only path for the district court to decide arbitrability.  *NASDAQ*, 957 F. Supp. 2d at 404–05.  Microsoft is a sophisticated party that knew what it was agreeing to when it selected the ICC Rules.  If Microsoft had wished to remove the question of arbitrability from the arbitration panel by opting out of that provision of the ICC Rules, it could have done so.  In fact, the parties modified some of the ICC Rules,[47] but left other rules unchanged, including Article 6, which empowers the arbitrators to decide any threshold questions of arbitrability—showing that they were deliberate about how extensively they wanted the ICC Rules to apply.

## II.  THE PARTIES' DISPUTES MUST BE ARBITRATED UNDER THE BCA'S PLAIN LANGUAGE.

### A.  Both counts in the Amended Complaint fit within Section 3.3 of the BCA.

In this Circuit "even a 'narrow arbitration clause must be construed in favor of arbitration'" and "arbitration should be compelled 'unless it may be said with *positive assurance* that the arbitration clause is *not susceptible of an*

---

[45]  JA at A-90 (BCA § 3.3.1).

[46]  While Microsoft has also relied on *Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002), the contract there contained a carve-out assigning certain decisions to an accountant, which the Court held created ambiguity as to who would decide questions of arbitrability.  *Katz* did not involve the ICC Rules, and the contract at issue here does not contain a similar carve-out.

[47]  *See* JA at A-90 (BCA §§ 3.3.2, 3.3.3).

*interpretation* that covers the asserted dispute.'" *Severstal US Holdings, LLC*, 865 F. Supp. 2d at 438 (quoting *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980)). The Supreme Court has held the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Under this liberal standard, both of Microsoft's claims are arbitrable.

*First*, Microsoft cannot show with "positive assurance" that the BCA's arbitration provision is "not susceptible to an interpretation" that covers Microsoft's first claim for approximately $7 million in interest on the Fiscal Year 2 Annual Invoice. Just the opposite—the only reasonable interpretation of the BCA is that a dispute concerning interest due *on an Annual Invoice* is a dispute "with respect to" an Annual Invoice.[48]

*Mineola Garden City Co. v. Bank of America*, 2014 U.S. Dist. LEXIS 88118, at *9–10 (E.D.N.Y. June 26, 2014), is especially instructive. There, the plaintiff argued that an arbitration clause covering "any dispute . . . concerning Expenses" did not apply to a dispute about an invoice because the defendant

---

[48] JA at A-90 (BCA § 3.3.1).

challenged its contractual obligation to pay while not objecting to the invoice amount. *Id.* at *9, 11. After observing "the federal policy in favor of arbitration requires the Court to construe arbitration clauses as broadly as possible," the court found that the language of the arbitration clause "suggests a broad scope with respect to disagreements involving expenses." *Id.* at *8–9. The *Mineola* court therefore held that the plaintiff failed to establish with "***positive assurance*** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at *10 (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987)). The same result is true here.

**Second**, Microsoft's own pleading belies its contention that its declaratory judgment claim does not arise from a dispute about the Fiscal Year 2 Annual Invoice. Microsoft alleges that "[t]wo days before Samsung made its payment of the FY2 net royalty amount (without interest), it sent Microsoft a letter . . . in which it set forth its positions . . . ***on the legal issues raised in this Complaint***, which are sharply contested by Microsoft."[49] Microsoft also acknowledges that Samsung paid the Fiscal Year 2 Annual Invoice under a reservation of rights, "preserving all of its legal positions" set forth in the November 27 letter.[50] Indeed,

---

[49] JA at A-49 (Am. Compl. ¶ 49).

[50] JA at A-39 (Am. Compl. ¶ 13).

24

the Amended Complaint is filled with allegations about disputed royalty payments

based on Annual Invoices:

- "Samsung breached the License Agreement last fall by refusing to make its Fiscal Year 2 royalty payment on time and then refusing to pay interest."[51]

- "Samsung also refused to make the undisputed FY2 royalty payment it owed to Microsoft on October 11, 2013, the date it was due."[52]

- "On November 29, 2013, Samsung finally paid Microsoft the previously agreed-to net royalty amount (minus certain funds for taxes), while preserving all of its legal positions.  However, despite Microsoft's repeated requests for contractually-mandated interest on the undisputed FY2 net royalty amount owed to Microsoft, Samsung has refused to make the interest payment it owes."[53]

- "In fact, allegedly due to the Nokia acquisition, Samsung did not pay the undisputed FY2 royalty amount due on October 11, 2013 as required."[54]

- "Two days before Samsung made its payment of the FY2 net royalty amount (without interest), it sent Microsoft a letter, dated November 27, 2013, in which it set forth its positions . . . on the legal issues raised in this Complaint which are sharply contested by Microsoft."[55]

The Amended Complaint contains at least a half dozen other paragraphs with

similar references to royalty payments under the Annual Invoice.[56]  Microsoft's

---

[51]  JA at A-36 (Am. Compl. ¶ 2).

[52]  JA at A-36 (Am. Compl. ¶ 12).

[53]  JA at A-36 (Am. Compl. ¶ 12).

[54]  JA at A-48–49 (Am. Compl. ¶ 47).

[55]  JA at A-49 (Am. Compl. ¶ 49).

[56]  *See*, *e.g.*, JA at A-39–41, 45, 48, 51 (Am. Compl. ¶¶ 14, 15, 16, 36, 46, 54).

declaratory judgment effectively asks for judicial resolution of the parties' disputes about the Fiscal Year 2 Annual Invoice, and thus is arbitrable.

### B. The district court erred in holding that Microsoft's claims do not fall within the BCA's arbitration clause.

The district court erred in holding that the parties' disputes are about contract interpretation, and not a Royalty Report or Annual Invoice, and thus do not fit the arbitration clause as narrowly interpreted by the court.[57]  While this Court has held that "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the Court of Appeals] focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted," *Genesco*, 815 F.2d at 846, the district court ignored the factual allegations and held without explanation that the "real controversy in this case concerns the interpretation of substantive provisions of both agreements."[58]  This conclusion appears to be based on the district court's erroneous assertion that "the information and calculations reflected [in the Royalty Reports and Annual Invoices] are undisputed."[59]  In fact, the Fiscal Year 2 Annual Invoice *is* disputed—as Microsoft

---

[57]  *See* JA at A-197–99 (MTCA Op.).

[58]  JA at A-198 (MTCA Op.).

[59]  JA at A-198 (MTCA Op.).

alleges in its Amended Complaint by stating that Samsung paid that Annual Invoice "with a reservation of its legal rights and positions."[60]

Similarly incorrect is the district court's reference to "the discrete accounting and invoicing issues that the parties agreed to arbitrate."[61] The BCA on its face reflects the parties agreement to arbitrate much more than the "discrete" issues that the district court referenced—the parties' arbitration clause broadly encompasses "any dispute" with respect to Annual Invoices and Royalty Reports, among other topics.[62] Moreover, the district court's conclusion does not apply cases holding that even when parties select certain topics to arbitrate, those topics must be construed broadly. *See Breckenridge*, 2014 U.S. Dist. LEXIS 142256, at *9–10 (where an arbitration provision mandates arbitration of "any dispute" with respect to certain enumerated categories, "it appears the parties intended the Provisions to be construed broadly within each category").

In short, nothing in the district court opinion suggests that it held—as it must—with "positive assurance" that the broad "any dispute" language of BCA Section 3.3 is "not susceptible to an interpretation that covers" Microsoft's claims.

---

[60] *See* JA at A-48–49 (Am. Compl. ¶ 47).

[61] JA at A-198 (MTCA Op.).

[62] *See* JA at A-90 (BCA § 3.3.1) (agreeing to arbitrate "***any dispute*** between the parties with respect to any Royalty and Credit Calculation Report, the calculation of any Reinvestment Credits under Section 3.1.4, the calculation of any Success Credit Recapture, the calculation of any WP Termination Credits, the scope or results of any audit under Section 3.1.5 or any Annual Invoice").

The district court merely states in conclusory fashion that Microsoft's claim for interest on an Annual Invoice or for a declaration about future Royalty Reports are "plainly not disputes about Royalty and Credit Calculation Reports or Annual Invoices."[63]

### C.   The PLA's arbitration clause and the BCA's forum-selection provision are irrelevant because the BCA's arbitration clause is controlling.

Microsoft argued in the district court (and can be expected to argue again here) that the PLA governs these disputes, and even if the BCA governs, the BCA's forum-selection clause demonstrates the parties' intent to litigate. Both arguments fail.

*First*, the BCA's arbitration provision governs these disputes—as the district court appeared to accept[64]—because Microsoft's claims arise from an Annual Invoice that was issued under the BCA, not the PLA. While both agreements provide for Annual Invoices,[65] the parties recognized the potential for duplication and provided in the BCA that the "Annual Invoice . . . will be deemed to constitute, include, *supersede* and be in lieu of any invoice to be issued by Microsoft under Section 4.1 or 4.2.3 of the PLA," and "no separate or additional

---

[63]   JA at A-198 (MTCA Op.).

[64]   *See* JA at A-197 (MTCA Op.) (performing arbitration analysis under BCA Section 3.3.1 and accepting that "Samsung argues that both causes of action in the Amended Complaint are arbitrable under the BCA").

[65]   *See* JA at A-73 (PLA § 4.2.3); JA at A-88 (BCA § 3.1.4).

invoice will be issued under . . . the PLA."[66]  The BCA contains analogous

provisions regarding Royalty Reports.[67]  Moreover, Samsung's Annual Invoices

were issued in the form provided for in the BCA, not the PLA.[68]  Accordingly,

only the BCA's arbitration provision is applicable to a dispute about an Annual

Invoice.

*Second*, the parties' consent to jurisdiction and venue in New York is

irrelevant.  BCA Section 9.5 expressly carves out disputes that the parties agreed to

arbitrate under Section 3.3 from the forum-selection clause.[69]  Even absent a carve-

out, the Second Circuit gives effect to an arbitration clause "unless the forum

selection clause specifically precludes arbitration"—which Section 9.5 does not do.

*Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's

denial and grant Samsung's motion to compel arbitration and stay the case.

---

[66]  JA at A-89 (BCA § 3.2.1).

[67]  *See* JA at A-88 (BCA § 3.1.4) ("[T]he Royalty and Credit Calculation Report . . . will be deemed to constitute, include, supersede and be in lieu of any 'Royalty Report' otherwise due under Section 4.2.3 of the PLA" and "no separate or additional 'Royalty Report' will be due under Section 4.2.3 of the PLA.").

[68]  *See* JA at A-89 (BCA § 3.2.1) (the "Annual Invoice . . . will be deemed to constitute, include, supersede and be in lieu of any invoice to be issued by Microsoft under . . . the PLA," and "no separate or additional invoice will be issued under . . . the PLA.").

[69]  *See* JA at A-98 (BCA § 9.5); *see also* JA at A-41–42 (Am. Compl. ¶ 21).

Dated: December 19, 2014
     New York, NY

Respectfully submitted,

O'MELVENY & MYERS LLP

By:   /s/ George A. Riley     
George A. Riley (griley@omm.com)
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Andrew Frackman (afrackman@omm.com)
Gary Svirsky (gsvirsky@omm.com)
Brad M. Elias (belias@omm.com)
Jeffrey A. N. Kopczynski (jkopczynski@omm.com)
Garabed M. Hoplamazian
(ghoplamazian@omm.com)
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Ryan K. Yagura (ryagura@omm.com)
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

John Kappos (jkappos@omm.com)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Ian Simmons (isimmons@omm.com)
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendant-Appellant Samsung Electronics Co., Ltd.*